UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MICHELLE L. RICH,

              Plaintiff,                    CIVIL ACTION NO. 07-13490

        v.                           DISTRICT JUDGE MARIANNE O. BATTANI

MICHAEL J. ASTRUE,            MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.
_____/

## REPORT AND RECOMMENDATION

### I.  Introduction

This Social Security case comes before the court on the parties' cross-motions for summary judgment.  For the reasons stated herein, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.

### II.  Background

On December 29, 2003, plaintiff filed an application for Supplemental Security Income (SSI), claiming that she was disabled due to attention-deficit hyperactivity disorder (ADHD), bipolar disorder, sleep apnea, headaches, depression, anxiety, post-traumatic stress disorder, fibromyalgia and obsessive compulsive disorder.  (Tr. 38-39)  Plaintiff completed the tenth grade and has a work history including employment as a cab driver and a cleaner.  (Tr. 40, 45)

The Social Security Administration (SSA) denied plaintiff's application on April 20, 2004. (Tr. 29) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 34) The hearing was held on July 6, 2006, before ALJ Ethel Revels. (Tr. 373-423) Plaintiff, represented by an advocate for the disabled, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On December 27, 2006, the ALJ issued a decision denying plaintiff's claim. (Tr. 16-27) The ALJ determined that the plaintiff had the following impairments: "a back disorder, gastroesophageal reflux disease, headaches, depression, bipolar disorder, obsessive compulsive disorder, anxiety, panic disorder with agoraphobia, and substance abuse addiction." (Tr. 21) The ALJ also determined that plaintiff's impairments were "severe" within the meaning of 20 C.F.R. § 416.920(c), but that she did not have an impairment or combination of impairments that met or equaled any of the impairments in Appendix 1, Subpart P of the Social Security regulations. (Tr. 22) The ALJ concluded:

> [The plaintiff] has the residual functional capacity [RFC] to perform a limited range of simple, repetitive work at the medium range of physical exertion. [The plaintiff] cannot work in close proximity to coworkers, can have no close supervision, and cannot work with the general public. [The plaintiff] cannot work at production pace and requires 2nd or 3rd shift work. [The plaintiff] has moderate limitations in her ability to carry out detailed instructions because of the pain and her mental impairments. (Tr. 22)

The ALJ concluded that there are a significant number of jobs in the national economy that the plaintiff could perform.[1] (Tr. 25) Accordingly, the ALJ found that plaintiff was not

---

[1] Although in her decision the ALJ refers to jobs in the national economy, in the hearing the VE confirmed that the jobs references were for the Southeast Michigan, Detroit area market. (Tr. 412)

"disabled" within the meaning of the Social Security Act. (Tr. 27) Plaintiff was 36 years old at the time of the ALJ's decision. (Tr. 21)

On January 8, 2007 the plaintiff filed a request for review of the ALJ's decision with the SSA Appeals Council. (Tr. 14) The Council denied the request on May 25, 2007. (Tr. 10) The ALJ's decision thus became the final decision of the Commissioner.

On August 27, 2008, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). As noted above, the matter comes before the court on parties' cross-motions for summary judgment. Plaintiff claims that the ALJ failed to consider the medical record as a whole, resulting in an RFC that does not fully account for Plaintiff's mental impairments, that the ALJ erred in finding plaintiff not credible, and that the ALJ failed to meet her Step Five burden. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

## III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further,

> an individual shall be determined to be under a disability only if
> his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists

in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The claimant bears the burden of proving that she is disabled.

Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate Social Security Disability claims. 20 C.F.R. §§

416.920. In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

The claimant must first show that she is not engaged in substantial gainful activity. Next the claimant must demonstrate that she has a "severe impairment." A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment." If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B. Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[The] decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

## IV. Analysis

The plaintiff claims that the ALJ failed to take into account all of plaintiff's medical record, resulting in an RFC and hypothetical question that inaccurately reflects all of plaintiff's limitations, that the ALJ erred in finding plaintiff to be not credible, and that the ALJ failed to adequately develop the record in her examination of the VE. At the hearing, the ALJ posed a hypothetical question to the VE regarding the ability of an individual of plaintiff's age, education, work experience, and RFC to engage in substantial gainful activity. The ALJ asked the VE to assume the following:

> [A]ssume a person the claimant's age [36], educational level, and
> work experience…when considering those factors that I am taking
> from the claimant's background, our hypothetical claimant needs a
> second of third shift. She needs work that does not require…close
> proximity to coworkers or close supervision. Or it must not be
> with the general public and it must not be at a production pace.
> Our hypothetical claimant also needs simple repetitive task [sic]
> because of there is [sic] a mental disorder which creates moderate
> limitations and ability to maintain concentration for extended

periods.  Moderate limitations in the ability to carry out detailed
instructions.  (Tr. 410-411)

In response to the hypothetical, the VE testified that such a person could work as a
packer, in a janitorial type position, in a sweeper or cleaner job, a machine tender, or in a small
products assembler position, and that approximately 19,200 such jobs existed in the southeast
Michigan area.  (Tr. 411-412)  Based on that testimony, the ALJ concluded that plaintiff was not
disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately
incorporates a claimant's physical and mental limitations, and the VE that fully and accurately
incorporates a claimant's physical and mental limitations, and the VE testifies that a person with
such limitations is capable of performing a significant number of jobs in the national economy,
such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v.
Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987).  Conversely, where
the hypothetical does not paint an accurate picture of the claimant's limitations, the VE's
testimony cannot support such a finding.  The ALJ is not required to specifically refer to a
claimant's medical conditions in the hypothetical.  Webb v. Commissioner of Social Security,
368 F.3d 629 (6th Cir. 2004).  Further, the ALJ is not required to include in a hypothetical
unsubstantiated allegations and complaints.  The hypothetical "need only include the alleged
limitations of the claimant that the ALJ accepts as credible and that are supported by the
evidence."  Delgado v. Commissioner of Social Security, 30 Fed.Appx. 542, 548 (6th Cir. 2002).
In this case, plaintiff argues that the hypothetical was inaccurate because the ALJ failed to give
appropriate weight to the findings of the treating physician and erred in assessing her credibility.

Additionally, the plaintiff claims that the ALJ failed to meet her Step Five burden by failing to fully develop the record by asking for DOT numbers from the VE.

## A. Treating Physician Opinions

Plaintiff claims that the ALJ failed to consider the medical record as a whole by failing to give appropriate weight to the opinion of a treating physician, Dr. Fluchre.  In so claiming, plaintiff invokes the treating physician rule, which provides as follows:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.  20 C.F.R. § 416.927(d)(2).

As the Sixth Circuit stated in Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997), "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  Indeed, the treating physician rule provides that a "treating source's" opinion regarding the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  See also Warner v. Commissioner of Social Sec., 375 F.3d 387, 390 (6th Cir. 2004) ("Treating physicians' opinions are only given [controlling or substantial] deference when supported by objective medical evidence").

1. **Dr. Fluchre as a treating physician**

According to plaintiff, the ALJ failed to attribute Dr. Fluchre's RFC assessment to the right source, the Hegira program records, because it was separated from the rest of the medical record. This failure, plaintiff argues, caused the ALJ to incorrectly assume that Fluchre's assessment was based on plaintiff's past history and that he was not a treating physician. 20 C.F.R. § 416.927(d)(2) describes the value of a treating physician's opinion as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

In considering the opinion of Dr. Fluchre, the ALJ stated at the hearing, that "[she] will make a decision based on the documents, placing greater weight on those documents that I have from those people who saw [claimant] over a period of time." (Tr. 422) She also stated "I will put more emphasis on the treatment notes over the period of time, not the RFC that was submitted by the doctor cause I had to look through to see if that corresponded to the earlier treatment notes." (Tr. 420) In her decision, the ALJ stated that she did consider Dr. Fluchre's assessment, but that "the conclusion in this assessment that claimant cannot maintain employment is out of proportion with the remaining objective evidence contained in the record and, although the assessment was given appropriate consideration, it was not given controlling weight." (Tr. 25)

`Both the ALJ's statement and the written opinion reflect that the ALJ did consider the opinions of Dr. Fluchre. The ALJ did not give controlling weight to the opinion of Dr. Fluchre,

but neither admits nor denies that he was a treating physician.  However, the ALJ's reluctance to specifically determine whether Fluchre was a treating physician is irrelevant because the ALJ rejected Fluchre's opinion based on its inconsistency with the rest of the record and not because it was unclear whether or not he was a treating physician.  It is the ALJ's duty to weigh the evidence in making a determination about whether a plaintiff is disabled and, as discussed below, the ALJ had a substantial basis for weighing the opinion of Dr. Fluchre the way she did in this case.

Although the ALJ did acknowledge that there was some confusion over whether or not the RFC completed by Dr. Fluchre was completed by a treating physician, there is no evidence in the record to support plaintiff's assertion that the ALJ did not properly consider Dr. Fluchre's opinion or rejected that opinion because it was unclear whether it was completed by a current treating physician.  Instead, the ALJ found that regardless of whether the opinion was from a treating physician, this opinion still was not entitled to controlling weight in light of the rest of the record.

## 2. **Controlling Weight**

The plaintiff claims that the ALJ failed to give controlling weight to the opinion of Dr. Fluchre and in so doing failed to give an RFC that accurately reflects plaintiff's limitations.  In his RFC assessment of plaintiff, Dr. Fluchre notes that plaintiff has "significant impairment," "severe mood swings," "difficulty with interpersonal relationships," "is isolative," "complains of being forgetful," and "has difficulty with authority figures."  (Tr. 297)  He also notes that the plaintiff cannot maintain employment as she has lost many jobs in the past year.  Id.  Plaintiff's brief states that Dr. Fluchre relied on the Hegira treatment notes to make his findings.  (Pl. Br.

10)  As discussed above, the ALJ did not specify whether Dr. Fluchre was a treating physician or not, but even so she gave his opinion appropriate consideration but found the opinion was not entitled to controlling weight.  (Tr. 25)  The ALJ instead chose to assign "greater weight to the reports of treating physicians that show that the claimant's condition improves with treatment and…show higher Global Assessment of Functioning despite her mental limitations."  (Tr. 25)  The ALJ references notes from other therapists and physicians at Hegira[2] as well as medical records from Westland Medical Center in making her determination of weight.  (Tr. 200-213, 224-292)  Even if the ALJ had explicitly named Dr. Fluchre as a treating physician, she still would not have given his opinion controlling weight because it was out of proportion with the other evidence in the record, there was no relevant medical evidence to support Dr. Fluchre's report, the opinions of other doctors and treating physicians conflicted with his RFC, and the plaintiff's own daily activities refuted some of Dr. Fluchre's assertions.

The ALJ found there was a lack of evidence supporting Dr. Fluchre's RFC.  The ALJ stated that while Dr. Fluchre's assessment "does note specific symptoms, there is no pertinent objective medical evidence that accompanies the assessment to support the conclusions of this assessment."  (Tr. 25)  Additionally, the ALJ cited Dr. Fluchre's own examination of May 30, 2006, where "even with noncompliance with treatment and medication the claimant was noted to be 'stable.'"  (Tr. 24)  Moreover, despite the fact that the form on which Dr. Fluchre completed his RFC provides a space in which to indicate whether or not the assessment was a current evaluation, Dr. Fluchre chose not to indicate the nature of this assessment.  (Tr. 295)  The ALJ

---

[2] The names of many of these physicians and therapists are illegible in the treatment notes; however, the handwriting is consistent throughout the fifteen months' worth of treatment notes.

was right to consider this as she examined the RFC in conjunction with the other evidence in the record to determine what weight to give Dr. Fluchre's RFC. (Tr. 25)

With regards to the RFC submitted by Dr. Fluchre on May 31, 2006, the ALJ said "I will put more emphasis on the treatment notes over the period of time, not the RFC…that you submitted from the doctor cause [sic] I have to look through to see if that corresponded to the earlier treatment notes. Treatment notes, I put more emphasis on." (Tr. 420) Dr. Fluchre did not appear in the record before May 30, 2006 in the treatment notes from Hegira, so, while the ALJ did consider the opinion of Dr. Fluchre, submitted just a few weeks before the plaintiff's hearing, she did put more emphasis on treatments notes from throughout Plaintiff's treatment rather than the RFC that appeared latest in the record. (Tr. 25)

According to plaintiff, the treatment notes support Dr. Fluchre's assessment of plaintiff's limitations. Indeed, the plaintiff points out that Dr. Fluchre relied on the records from Hegira Programs in making his assessment. (Pl. Br. 10) The treatment notes referenced, however, provide an incomplete picture of plaintiff's progress at Hegira because of her frequent nonattendance. Throughout the treatment, plaintiff missed many scheduled appointments (Tr. 224, 227-228, 231, 237, 240, 243-244, 246, 249, 251, 254-255, 261-262, 264, 265, 266, 273), admitted her reluctance to participate in group therapy, and was dropped from a therapy group for failing to attend. (Tr. 248, 254) On April 11, 2006, her therapist wrote a letter to plaintiff stating that her case would be closed due to prolonged absence if she did not make and keep a therapy appointment by April 21, 2006. (Tr. 227) Plaintiff then had one more appointment on April 19, 2006 (Tr. 225) and missed another (Tr. 224) before ostensibly her first consultation with Dr. Fluchre on May 30, 2006.

Despite this noncompliance, in other treatment notes from Hegira, other physicians that treated the plaintiff noted in August of 2005 that there is "symptom regression." (Tr. 245, 250) Physician notes of October 2005 report that she is "improving," reports "feeling better" and that she is "getting housework done." (Tr. 242) Her physician notes from January, 2006, report that she is "not doing too bad," and that her energy and concentration were "OK." On February 21, 2006, a physican notes that plaintiff was "improving" with her sleep habits especially. (Tr. 232) This evidence is consistent with the ALJ's determination that, despite noncompliance, the plaintiff's condition improved as she continued to take her medication and attend therapy. (Tr. 25)

Further, there is evidence in the record that directly contradicts Dr. Fluchre's assessment. Indeed, there is direct contradiction in the record of Fluchre's assessment that plaintiff is forgetful and "has difficulty with authority figures." (Tr. 297) In plaintiff's initial evaluation for Heigra, it is noted that she had good memory (Tr. 270), and in her own function report plaintiff states that she did not have problems getting along with bosses or other people in authority. (Tr. 64) Thus, the incomplete picture showing plaintiff's treatment, the records that indicate that when plaintiff complied with treatment, she showed improvement, and the direct contradictions in the record all contribute to the ALJ's determination that Dr. Fluchre's RFC was not supported by objective medical evidence.

The ALJ found as well that other medical opinions in the record do not support the dismal RFC assessment by Dr. Fluchre of the plaintiff. The ALJ considered these opinions as well as Dr. Fluchre's, citing an assessment from Community Care Services on March 1, 2004, where plaintiff was assigned a GAF of 53, and an examination by the State of Michigan

Disability Determination Service where she was assigned a GAF of 65. (Tr. 25, 90-100, 113-118) Upon beginning her preliminary treatment plan at Heigra, plaintiff was assigned a GAF of 43 on February 28, 2005 (Tr. 285) after she had been dismissed from Community Car Services because of a "lack of consistency." (Tr. 90) However, as discussed above, the Hegira treatment notes shows that plaintiff improved during her time at Hegira, and the ALJ found that the opinions of the clinicians at CCS and the State DDS were more consistent with the above assessment that plaintiff improved when she complied with her treatment. The record also includes a mental RFC completed by the Human Capability Corporation on April 16, 2004, that contradicts Dr. Fluchre's assessment. This RFC indicates that the plaintiff was "not significantly limited" in areas of understanding and memory and sustained concentration. (Tr. 143-146) This RFC also found that plaintiff was only moderately limited in her ability to remember and carry out detailed instructions, or work at a constant pace. (Tr. 143-144) This assessment conflicts with the RFC of Dr. Fluchre, who found that plaintiff was "markedly limited" or "extremely limited" in these same areas. The opinions of other doctors, therefore, were more consistent with the record. The ALJ thus had a substantial basis for assigning greater weight to these opinions than the opinion of Dr. Fluchre. (Tr. 25)

Further, the low RFC assessed by Dr. Fluchre is inconsistent with evidence in the record indicating that plaintiff is able to care for herself and her young son. The plaintiff provided information on her function report in February, 2004, stating that she takes her son to school, makes sure he takes his medication, and helps him with some homework assignments. (Tr. 59) Plaintiff further reports that she will cook, clean, drive to visit family and read after getting her son off to school. (Tr. 59) Plaintiff also reported to her physician at Hegira in October, 2005,

that she was "getting housework done." (Tr. 242) This evidence, combined with evidence discussed above indicating that plaintiff's condition improves with consistent treatment and medication contrasts with the low RFC provided by Dr. Fluchre which asserts that plaintiff is extremely limited in her ability to maintain a daily routine and perform activities within a schedule. (Tr. 296) The ALJ thus found that Dr. Fluchre's assessment of the ability of plaintiff to perform daily functions was inconsistent with her representations to her other physicians as well as the evidence provided by the plaintiff herself in her activity report as to her daily routine.

As the opinion provided by Dr. Fluchre is inconsistent with much of the evidence in the rest of the record, the ALJ may reduce the weight given to the opinion of the treating physician. 20 C.F.R. § 416.927(d)(2). The timing of Dr. Fluchre's opinion, the inconsistency of Dr. Fluchre's assessment with the rest of the treating notes, the conflicting opinions of different physicians who examined plaintiff and the inconsistency of plaintiff's daily activities with Dr. Fluchre's opinion of plaintiff's ability to function lead the ALJ and this court to disagree with Dr. Fluchre's assessment that the plaintiff cannot maintain employment. In light of this, this court finds that the ALJ had a substantial basis to decline to give controlling weight to the opinion of Dr. Fluchre.

### B. Plaintiff's Credibility

In her testimony, the plaintiff discussed her difficulties with depression, her inability to take care of herself and her son, her irregular eating and sleep habits, and her problems with mood swings. (Tr. 376-384) She testified that her depression made her unable to complete the chores that were required of her at a woman's shelter in 2003. (Tr. 385-390) She testified that she had last used illegal drugs when she was 14 or 15, then later testified that she had used

marijuana in 2005 when confronted about treatment notes in which she admits to marijuana use. (Tr. 394-399)  She testified to having trouble getting along with family members and coworkers. (Tr. 404-405)  Finally, she claimed in her testimony that she could be unable to work at a job that required her to be punctual and remain confined at a job for an eight-hour day.  (Tr. 407-409)

In her decision, the ALJ considered this testimony but found that "the medical record does not support the claimant's allegations of limitations."  (Tr. 22)  In support of this conclusion, the ALJ cites to treatment notes that, physically, the plaintiff had good strength, no tenderness, and a normal range of motion.  (Tr. 22, 204)  The ALJ also found that plaintiff's noncompliance with treatment hurt her credibility.  (Tr. 24)  The noncompliance is important in this case because, as noted by the ALJ in finding plaintiff's RFC, treatment notes showed that she was improving when she complied with her treatment and medication, and the medical opinions of many therapists and physicians showed that was capable of functioning and maintaining a routine.  (Tr. 24-25)  She also points to the treatment history of plaintiff, which includes physician assessments that she was able to take care of her personal needs and her son. (Tr. 23, 113-116)  Finally, the plaintiff provided contradictory testimony about her history of substance abuse.  Based on the testimony and its inconsistency with the record, as well as plaintiff's noncompliance with treatment, the ALJ found that the plaintiff's allegations as to her limitations were not credible.  (Tr. 24)

An ALJ's findings regarding the credibility of the applicant "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  <u>Walters v. Commissioner of Social Sec.</u>, 127 F.3d 525, 531 (6th Cir.

1997).  However, credibility assessments are not insulated from judicial review.  Despite the deference due, such a determination must nevertheless be supported by substantial evidence.  Id. With regard to allegations of disabling pain, the regulations provide that a claimant's statements regarding her "pain or other symptoms will not alone establish that [she is] disabled[.]"  20 C.F.R. § 416.929(a); see also Walters, supra, 127 F.3d at 531.  Rather, "there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence…would lead to a conclusion that you are disabled."  20 C.F.R. § 416.929(a).

While the ALJ does concede that the determinable impairments on record could reasonably be expected to produce the alleged symptoms, she found that the statements of the plaintiff regarding the intensity and limiting effects of these symptoms not to be credible.  (Tr. 24)  Plaintiff concedes that the limitations suffered by the plaintiff are primarily mental, and concedes that there is no physical limitation that would prevent the plaintiff from performing the jobs specified by the VE at the hearing.  (Pl. Br. 14)  Regarding her capacity to function mentally, as discussed above, the opinions of physicians and the evidence in the record that the judge relied upon showed that plaintiff was capable of functioning independently, that she could care for herself and her son, and that she was able to maintain a routine as well as get along with people in positions of authority.  The treatment notes also showed regression, improvement, and stability of mood when she attended therapy and medication reviews regularly.  Although the treatment notes showed that plaintiff often quit jobs out of boredom, she still reported feeling bad when she lost a job and was often enthusiastic about starting new jobs.  (Tr. 240A)  Even on

one occasion after she had been fired from a job, plaintiff reported to her physician that she was "not doing too bad" and was still active in searching for jobs.  (Tr. 238)  These reports, often provided by the plaintiff herself, from the treatment notes do not support the plaintiff's allegations that she is unable to work.[3]

The ALJ also cited the plaintiff's "ongoing noncompliance with treatment and medication" in finding the plaintiff to be not credible.  (Tr. 24)  An ALJ considers use of medication and other treatment when evaluating credibility.  20 C.F.R. § 416.929(c)(3)(iv)-(v). The record reflects ongoing noncompliance that supports the ALJ's determination that the plaintiff was not credible.  She was discharged from Community Care Services, where she had received treatment from March 1, 2004, on January 4, 2005, because of a failure to follow through with a treatment plan.  (Tr. 90-91)  Plaintiff was a patient at Hegira Programs from February 17, 2005, through May 30, 2006, and during that time plaintiff missed many scheduled appointments.  (Tr. 224, 227-228, 231, 237, 240, 243-244, 246, 249, 251, 254-255, 261-262, 264, 265, 266, 273)  The plaintiff gave reasons for some of these absences, including job interviews or filling out job applications (Tr. 231, 243-244), inability to get to the clinic because of bad weather (Tr. 237), or illness.  (Tr. 240)  On other occasions, the plaintiff simply did not show up.  (Tr. 224, 227-228, 246, 249, 251, 254-255, 261-262, 264, 265, 266, 273)  During her treatment at Hegira Programs, on two occasions, plaintiff reported non-compliance with her medication either because it made her drowsy or she needed the prescription filled.  (Tr. 234-

---

[3] To refute these reports in her treatment notes, the plaintiff argues that because of the episodic nature of her mental illnesses, the evidence that the ALJ relies on is only indicative of her "up" periods and not her "down" periods.  However, the plaintiff never points to any medical evidence that reflects her difficulty in her "down" periods.

235, 225)  Due to these failures to follow through with treatment, the ALJ properly considered

the noncompliance with medication and repeated failure to attend scheduled therapy

appointments in weighing the plaintiff's credibility.

In her testimony, the plaintiff alleged that she is unable to care for herself and had

thoughts of hurting herself.  (Tr. 386-387)  Yet despite these allegations, in a function report of

February 14, 2004, the plaintiff reports performing a range of daily activities including cooking,

cleaning, taking her son to school and making sure he takes his medication, as well as helping

him with some homework assignments.  (Tr. 58-69)  In addition, the activity report notes that

plaintiff had no problems with her personal care, and that she was able to remember to take her

medicines on her own and needed no help with personal grooming.  (Tr. 60)  In her treatment

notes from Hegira Programs, plaintiff reported feeling anxious and depressed on several

occasions but denied thoughts of hurting herself.  (Tr. 241, 248-249, 269, 275, 292)  This

contradicts plaintiff's testimony that she was unable to care for herself.  The ALJ was correct to

consider this inconsistency in determining if there was substantial evidence that showed plaintiff

to be not credible.

The plaintiff also claims that the daily activities that the plaintiff performs, such as

cooking, cleaning, etc., are mostly physical, not mental, and are not consistent with an ability to

work.  However, as discussed above, plaintiff's testimony contradicts the report she made of her

daily activities and her representations during her treatment and that weighs against her

credibility.  Moreover, the ALJ did not make her determination that the plaintiff was able to

work based solely on the plaintiff's daily activity report, but the ALJ also relied on the medical

evidence that showed plaintiff could perform simple, repetitive tasks and could sustain concentration and persistence. (Tr. 24-25, 143-146)

The plaintiff further claims that the ALJ erred in considering plaintiff's job search as evidence that she was not disabled and indeed considered herself capable of working. (Pl. Br. 18) Plaintiff cites to Dr. Fluchre's RFC, where he states that she "cannot maintain employment (lost many jobs in the past year)." (Tr. 297) However, the ALJ also considered plaintiff's own statements, where she showed that she was actively searching for a job. (Tr. 24, 230-31, 234, 238, 240a, 242, 245) It is the ALJ's job to resolve conflicting evidence in making her determination about a claimant's disability, and she did not err in doing so here. However, the ALJ only mentioned the plaintiff's job search in passing, and if the ALJ did consider it as a factor in denying benefits to plaintiff, then it was only a minor one. (Tr. 24) Considering plaintiff's testimony, as well as Dr. Fluchre's opinion and the lack of support in the record for the opinion that she cannot maintain employment, the ALJ did not err if she considered the plaintiff's job search in her determination of her disability.

Plaintiff has also been inconsistent with her reports of prior drug use. In her testimony before the ALJ, she testified that she had not used illegal drugs since she was 14 or 15 years old. (Tr. 394) However, in the records from Hegira, plaintiff reported on a psychosocial assessment form that she used "pot" daily from 1990-1998, when she would have been in her 20s. (Tr. 285) Earlier on that same form, dated March 1, 2005, plaintiff reported that she had last used pot "1 week ago." (Tr. 283) She had previously given inconsistent reports to Drs. Rojas and Baddigam, telling them, respectively, that she had ceased using illegal drugs in 1991 and 1999. (Tr. 114, 120) The plaintiff argues that her mental disorders make her susceptible to drug use,

yet there is no evidence in the record to support that this was the case for plaintiff. Plaintiff's contradictory reports regarding her drug use provide support for the ALJ's credibility determination.

The ALJ, considering the contradictory evidence regarding plaintiff's drug use in conjunction with the noncompliance with treatment and contradictory testimony concerning her ability to care for herself, found that the plaintiff's allegations as to the severity of her limitations to be not credible. (Tr. 23) Great weight and deference must be given to the ALJ's credibility determination, and, as the ALJ properly considered the plaintiff's testimony and found it to be not supported by the objective medical evidence in the record, there is substantial evidence supporting the ALJ's finding that the plaintiff was not credible.

### C. The ALJ's Step Five Burden

Plaintiff argues that the case should be remanded because the ALJ failed to fully develop the record according to her duty under SSR 00-4P by failing to request the DOT numbers from the VE and verifying that this testimony was consistent. Plaintiff further claims that the ALJ was under a heightened duty to develop the record because plaintiff was represented by a non-attorney. SSR 00-04P provides, in the relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically
> "trumps" when there is a conflict. The adjudicator must resolve
> the conflict by determining if the explanation given by the VE or
> VS is reasonable and provides a basis for relying on the VE or VS
> testimony rather than on the DOT information.

The rule as written does not require that the ALJ request or the VE testify regarding specific DOT numbers, but it does require that the VE verify that the information they provide is consistent with the occupational information in the DOT. In case of conflict, it would be the ALJ's duty to decide which information, the DOT or that supplied by the VE, is to be relied on. In this case, the ALJ asked the VE at the hearing whether "the classification and requirements of those jobs [identified by the VE] [were] consistent with that of the DOT and its companion publication the FCR [phonetic]." (Tr. 412) The VE replied in the affirmative. Id. The ALJ relied on this testimony in making her finding that plaintiff was not disabled. (Tr. 26) Plaintiff argues that since a restrictive RFC was presented to the VE and each job listed by the VE corresponds to several DOT numbers, the ALJ should have requested the DOT numbers pursuant to a "higher duty" that existed because plaintiff's representative was not an attorney. (Pl. Br. at 20) There is no definite rule regarding when the ALJ takes on a heightened duty to develop the record. Lashley v. Secretary of HHS, 708 F.2d 1048, 1051 (6th Cir. 1983). The Sixth Circuit "has indicated that it will "scrutinize the record with care" where the claimant appeared before the administrative law judge without counsel." Id. at 1052 (citing Holden v. Califano, 641 F.2d 405, 408 (6th Cir.1981). In the instant case, plaintiff has never asserted that her representation at the hearing was inadequate and the plaintiff's citation to Lashley v. Secretary of HHS, 708 F.2d 1048 (6th Cir. 1983) is unpersuasive. In Lashley v. Secretary of HHS, the court held that the ALJ's failure to fully develop the record deprived the plaintiff of a

full and fair hearing.  Id.  The plaintiff in Lashley was unrepresented and visibly confused.  Id.

The hearing lasted only 25 minutes and the questioning was superficial, neglecting to ask why

the claimant was forced to leave a job he had held for only three days and therefore failing to

obtain information that would have been helpful in determining the plaintiff's ability to do work.

Id at 1053.  As a result of this, the court decided to remand the case to give Mr. Lashley a full

and fair hearing.  Id at 1048.

This court finds that plaintiff's case is distinguishable because she had a full and fair

hearing.  During her testimony, the plaintiff displayed good concentration and understanding of

what was happening during the hearing, and had a representative who presented himself as an

"advocate for the disabled" from the Disability Benefits Corporation.  (Tr. 197-198, 275-423)

Presumably, such a representative would be familiar with and well-versed with the hearing

procedures.  This representative was present and active at the hearing and was involved in the

administrative process leading up to it.  (Tr. 149-150, 197-200, 221, 375-423)  The plaintiff has

presented no evidence to show that her representation was ineffective, and so in this respect her

situation is not analogous to Mr. Lashley.  Upon examination of the transcript, this court finds

that the ALJ had no heightened duty to develop the record here, unlike the ALJ in Lashley,

because the plaintiff was adequately represented at a hearing that lasted nearly an hour and a

half, produced fifty pages of transcript and fully inquired into all of plaintiff's limitations,

including an in depth discussion of her work history.  (Tr. 373-423)

Even if the ALJ erred in not asking for specific DOT numbers, here the error was

harmless and did not affect the fairness or the outcome of plaintiff's hearing.  The plaintiff

specifically alleges the ALJ failed to meet her burden under step five in finding a significant

number of jobs that the plaintiff could perform. (Pl. Br. 19)  The plaintiff argues that the ALJ was not specific enough while giving the RFC, and in turn did not receive a specific enough response from the VE.  The ALJ included in the plaintiff's RFC that the plaintiff cannot work "at a production pace." (Tr. 411)  The plaintiff alleges that this is not specific enough, since the jobs mentioned by the VE in response "surely…require work at a consistent pace," (Pl. Br. 19), yet plaintiff fails to indicate which pace the judge should have specified.  In fact, the plaintiff has not pointed to any job indicated by the VE that requires a pace that plaintiff cannot keep because of her alleged limitations.

While plaintiff argues that the ALJ should have asked the VE for exact DOT numbers regarding the positions she listed in response to the RFC hypothetical, as established above, the ALJ was under no duty or heightened duty to do so.  Further, the plaintiff has not pointed to any evidence that there was in fact an inconsistency between the DOT and the VE evidence.  While asking the VE to provide DOT numbers would have resulted in a more complete record, in asking whether the evidence presented was consistent with the DOT and the plaintiff's limitations (Tr. 412), the ALJ has fulfilled her duty under SS 00-04P.  Even if the ALJ did err in not asking the VE to be more specific by providing exact DOT numbers, any error was harmless and did not affect the outcome of plaintiff's case.  Thus the ALJ did not err in relying on the VE's testimony, as it was, in finding the plaintiff not disabled.

## V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: August 15, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on August 15, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

-24-